UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES O. YOUNG,

                             Plaintiff,

      v.                                                         9:24-CV-1286
                                                                (BKS/CFH)

DANIEL MARTUSCELLO, III, et al.,

                             Defendants.
_____

APPEARANCES:

JAMES O. YOUNG
Plaintiff, pro se
23-B-2114
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953


BRENDA K. SANNES
Chief United States District Judge

**DECISION and ORDER**

I.      **INTRODUCTION**

      Plaintiff James O. Young commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 8 ("IFP Application"). By Decision and Order entered on January 22, 2025, this Court granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), found that certain claims against defendants Corrections Sergeant Bullock and Superintendent Uhler required a response. Dkt. No. 10 ("January 2025 Order").

1

Plaintiff's remaining Section 1983 claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *Id*. at 20.

On March 5, 2025, counsel appeared on behalf of defendants Bullock and Uhler. *See* Dkt. No. 17. Presently before the Court is plaintiff's amended complaint, which was filed as of right. Dkt. No. 20 ("Am. Compl."). On April 7, 2025, counsel filed an answer to the amended complaint. *See* Dkt. No. 23 ("Answer").

## II.  SUFFICIENCY OF THE AMENDED COMPLAINT

### A.  The Complaint and January 2025 Order

In the original complaint, plaintiff asserted Section 1983 claims arising out of an alleged wrongdoing while he was incarcerated at Upstate Correctional Facility. *See generally*, Compl.

The complaint named the following officials as defendants: (1) Corrections Sergeant Bullock; (2) Corrections Lieutenant Pilon; (3) New York State Department of Corrections and Community Supervision ("DOCCS") Commissioner Daniel Martuscello, III; (4) Upstate Correctional Facility Superintendent Uhler; and (5) an unidentified number of "John & Jane Doe" corrections officers who work under the "command" of defendants Bullock and Pilon. Compl. at 1-3.

The complaint was liberally construed to assert the following Section 1983 claims against the named defendants: (1) a First Amendment retaliation claim against defendant Bullock; (2) Eighth Amendment failure-to-protect claims against defendants Bullock, Pilon, Uhler, and Martuscello; (3) a Fourteenth Amendment disciplinary due process claim against

defendant Pilon; and (4) Fourteenth Amendment equal protection claims against defendants Bullock and Pilon.  *See* January 2025 Order at 7.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the following claims were found to survive sua sponte review: (1) plaintiff's First Amendment retaliation claim against defendant Bullock; and (2) plaintiff's Eighth Amendment failure-to-protect claims against defendants Bullock and Uhler.  *See* January 2025 Order at 20.

**B.     Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the January 2025 Order and it will not be restated in this Decision and Order.  *See* January 2025 Order at 3-5.

As with the original complaint, plaintiff's amended complaint re-asserts Section 1983 claims based on alleged wrongdoing that occurred during plaintiff's confinement at Upstate Correctional Facility.  *See generally*, Am. Compl.  In fact, the pleading is virtually identical to the original complaint, except that it includes a few additional allegations of wrongdoing, and plaintiff has attached certain additional documents to the submission that were not attached to the original complaint.  The following facts are set forth as alleged in the amended complaint, or indicated in documents attached thereto.

On April 28, 2024, at approximately 6:30 a.m., plaintiff was called into the Sergeant's Office by defendant Corrections Sergeant Bullock to discuss fifteen "harassment" grievances

3

that plaintiff authored against various corrections officials. Am. Compl. at 4. While in the office, defendant Bullock indicated that plaintiff "should have brought the grievances to his attention" before submitting them. *Id*. Shortly thereafter, "[t]he discussion began to go negative" and plaintiff asked defendant Bullock "if the audio and video was on[.]" *Id*. Defendant Bullock responded "in the affirmative" and "openly admitted" that he intended to house plaintiff with other inmates "so they may do [him] some harm." *Id*.

Plaintiff asked whether this statement meant that defendant Bullock intended to have plaintiff assaulted or killed, to which defendant Bullock responded, "Yes." Am. Compl. at 4. Defendant Bullock "also admitted" that he has housed other inmates that have "similar charges" with gang members who attempted to harm them. *Id*.

At some point after this discussion, defendants Corrections Officers "John Doe" "follow[ed]" defendant Bullock's "order" and housed plaintiff with "known gang members" despite knowing that plaintiff would face a risk of harm based on "housing dangers[,]" which did not adhere to "facility housing protocol." Am. Compl. at 5.

On September 15, 2024, Corrections Officer Grey (not a party) moved plaintiff to a cell with an "extremely violent [sic]" inmate. Am. Compl. at 4. Within fifteen minutes, plaintiff was involved in an altercation with this inmate. *Id*. Thereafter, plaintiff was issued a misbehavior report charging him with one or more unidentified rules violations in connection with the incident. *Id*.

On September 22, 2024, plaintiff attended a disciplinary hearing before defendant Corrections Lieutenant Pilon. Am. Compl. at 4. Before the hearing began, defendant Pilon referred to plaintiff in a derogatory manner, and used cuss words while ordering him to sit in silence. *Id*. Defendant Pilon also threatened to "tell everyone" that plaintiff is a "rape-o" if he

did not comply. *Id*. In response, plaintiff stated, "I am amazed at how you will threaten me without any type of hearing device." *Id*. Defendant Pilon told plaintiff to leave the room, called him unflattering names, and also advised him to "keep [his] eyes open[.]" *Id*.

Defendant Pilon did not "accept[ ] . . . documents" that plaintiff wished to present during his disciplinary hearing to establish his innocence and ultimately found plaintiff guilty of the charges in the misbehavior report despite a lack of evidence establishing plaintiff's guilt. Am. Compl. at 5. It appears that plaintiff was sentenced to 30 days of keeplock confinement as a result of defendant Pilon's disciplinary determination. *Id*. at 25.

According to plaintiff, defendants New York State Department of Corrections and Community Supervision ("DOCCS") Commissioner Daniel Martuscello, III and Upstate Correctional Facility Superintendent Uhler "knew or should have kn[o]wn through reports and court actions . . . as well as emails, . . . meetings and conference calls" that officials at Upstate Correctional Facility were engaged in wrongdoing. Am. Compl. at 4-5.[1]

Liberally construed, the amended complaint re-asserts the following Section 1983 claims against the named defendants: (1) a First Amendment retaliation claim against defendant Bullock; (2) Eighth Amendment failure-to-protect claims against defendants Bullock, Pilon, Uhler, Martuscello, and the "Doe" corrections officers; (3) a Fourteenth Amendment disciplinary due process claim against defendant Pilon; and (4) Fourteenth Amendment equal protection claims against defendants Bullock and Pilon.[2]

---

[1] Plaintiff has also attached a copy of a letter addressed to defendant Uhler, which is dated May 6, 2024, and details the nature of his discussion with defendant Bullock on April 28, 2024. Am. Compl. at 6.

[2] The amended complaint also seeks damages against the named defendants "for participating in [an] illegal strike leaving [the inmate] population unguarded [and] unprotected." Am. Compl. at 5. However, the pleading does not include any details regarding (1) when the "strike" occurred, (2) why it occurred, (3) how long it lasted, (4) what harm plaintiff suffered as a result of the "strike," if any, (5) which defendants participated in the "strike", or (6) how a state actor's participation in a labor strike amounts to a violation of plaintiff's constitutional rights.

For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C.     Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Reasserted Claims That Previously Survived Sua Sponte Review

As noted, the allegations in the amended complaint are materially similar to the allegations in the amended complaint with respect to plaintiff's Section 1983 claims that previously survived sua sponte review.  Furthermore, counsel has already filed an answer to the amended complaint with respect to these claims.  Accordingly, and for the reasons set forth in the January 2025 Order, the following claims once again survive sua sponte review and require a response: (1) plaintiff's First Amendment retaliation claim against defendant Bullock; and (2) plaintiff's Eighth Amendment failure-to-protect claims against defendants

---

Thus, the Court does not construe the amended complaint to assert a cognizable Section 1983 claim against any of the named defendants based on plaintiff's "illegal strike" allegations.

Bullock and Uhler.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2. Failure-to-Protect Claims Against Pilon and Martuscello

The legal standard governing Eighth Amendment failure-to-protect claims was discussed at length in the January 2025 Order and will not be restated herein.  *See* January 2025 Order at 12-15.

The amended complaint does not include any materially new allegations related to plaintiff's failure-to-protect claims against defendant Pilon and Martuscello.  Rather, as with the original complaint, the pleading simply repeats plaintiff's prior allegations that (1) defendant Pilon called plaintiff names and threatened him – by threatening to tell other inmates that he is a "Rape-O" and that he should "keep [his] eyes open[,]" and (2) defendant Martuscello "knew or should have known" that defendants Bullock and Pilon were engaged in wrongdoing by virtue of "reports and court actions . . . as well as emails, . . . meetings and conference calls" involving officials at Upstate Correctional Facility.  *See* Am. Compl. at 4-5.

Accordingly, and for the reasons set forth in the January 2025 Order, plaintiff's failure-to-protect claims against defendants Martuscello and Pilon are once again dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  *See* January 2025 Order at 10-15.

### 3. Failure-to-Protect Claims Against the "Doe" Defendants

The original complaint named an unidentified number of "John & Jane Doe" corrections officials as defendants based solely on allegations that these officials work under the "command" of defendants Bullock and Pilon.  *See* Compl. at 1, 3.  The amended complaint includes additional allegations clarifying that plaintiff has named these officials as

7

defendants based on their role in carrying out the directive of defendant Bullock, and housing plaintiff with "known gang members" despite knowing that plaintiff would face a risk of harm based on "housing dangers[,]" which did not adhere to "facility housing protocol." Am. Compl. at 5. These vague allegations are insufficient to state an Eighth Amendment claim for at least two reasons.

First, as noted in the January 2025 Order, where the identity of an official is unknown, the law is well-settled that a pleading must allege facts sufficient to plausibly suggest that each "Doe" defendant was personally involved in the alleged constitutional deprivations, and naming a group of "Doe" defendants does not satisfy this standard. *See* January 2025 Order at 8-9. Indeed, it is entirely unclear how many "Doe" officials were allegedly involved in carrying out defendant Bullock's directive, when those officials engaged in this activity, or how these officials could be identified during discovery.

Second, the amended complaint fails to explain how any "Doe" official should have known that plaintiff's housing assignment (on one or more unidentified dates) placed him at risk of harm. The pleading does not, for example, include any details regarding a specific cellmate with whom plaintiff was housed that threatened plaintiff with harm or had a known history of violence. Nor does the pleading allege that plaintiff advised any "Doe" officials that his housing situation presented him with a risk of harm. Furthermore, carrying out an order from a supervisor to house plaintiff with a particular inmate even though the housing assignment does not adhere to facility or departmental rules or practices is not, without more, a basis for inferring deliberate indifference to plaintiff's well-being. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (explaining that deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Tuitt v. Chase*, No. 9:11-CV-0776 (DNH/TWD), 2013 WL 877439, at *10 (N.D.N.Y. Jan. 30, 2013) ("[A] violation of a DOCCS directive does not state a claim for a constitutional violation under § 1983."), *report and recommendation adopted by* 2013 WL 877617 (N.D.N.Y. Mar. 8, 2013); *H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 373 (N.D.N.Y. 2020) (same); *Little v. Soulia*, No. 9:19-CV-0263 (TJM/TWD), 2020 WL 13801983, at *7 (N.D.N.Y. Jan. 13, 2020) ("[T]here is no basis for the Court to plausibly infer from the allegations in the proposed amended complaint that defendant French had any reason to know when he allegedly turned off plaintiff's water on May 25, 2017, that it would not be turned back on until May 28, 2017. Thus, even assuming that plaintiff suffered a serious deprivation of a basic human need as a result of allegedly not having access to water between May 25 and May 28, 2017, the proposed amended complaint lacks any allegations which plausibly suggest that defendant French (1) was personally involved in causing this serious deprivation of basic human needs, or (2) acted with deliberate indifference in allegedly following defendant Mason's directive to shut off plaintiff's access to water.").

Accordingly, plaintiff's failure-to-protect claims against the "Doe" defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4. Disciplinary Due Process Claim Against Pilon

The legal standard governing Fourteenth Amendment disciplinary due process claims was discussed at length in the January 2025 Order and will not be restated herein. *See* January 2025 Order at 15-17.

The original complaint was construed to assert a due process claim against defendant Pilon based on allegations that this official engaged in a verbal spat with plaintiff, and either unnecessarily delayed plaintiff's disciplinary hearing, or conducted it in plaintiff's absence. *See* Compl. at 4.  The amended complaint includes additional allegations regarding plaintiff's disciplinary hearing before defendant Pilon, and clarifies that defendant Pilon (1) did not "accept[ ] . . . documents" that plaintiff wished to present during his disciplinary hearing, (2) conducted a portion of the hearing in plaintiff's absence, and (3) ultimately found plaintiff guilty of the charges in the misbehavior report despite a lack of evidence establishing plaintiff's guilt.  Am. Compl. at 5.  It also appears from one of the documents attached to the amended complaint that plaintiff was sentenced to 30 days of keeplock confinement as a result of defendant Pilon's disciplinary determination.  *Id*. at 25.

Assuming, without deciding, that the allegations in the amended complaint and documents attached thereto are sufficient for the Court to plausibly infer that plaintiff was denied the process to which he was entitled during his disciplinary hearing, the pleading does not expressly indicate plaintiff's disciplinary sanctions resulting from the hearing, or describe the nature of plaintiff's restrictive confinement in any detail.  Furthermore, the Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*.  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).  Thus, the Court is unable to plausibly infer from the allegations in the amended complaint that plaintiff's disciplinary sentence triggered a liberty interest.  *See, e.g.*, *Elleby v. Martucello*, No. 9:16-CV-1335 (MAD/DEP), 2018 WL 3769965, at *3 (N.D.N.Y. Aug. 9, 2018) ("The Court notes that Plaintiff was sentenced to 90 days in SHU which, without additional

allegations, is insufficient to establish that he suffered from an atypical and significant confinement as required by Sandin."); *Bell v. Saunders*, 9:20-CV-00256 (BKS/TWD), 2022 WL 2064872, at *6 (N.D.N.Y. June 8, 2022) ("District courts in this Circuit routinely hold that confinement in SHU for 30 days, under ordinary SHU conditions, does not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development." (collecting cases)); *Mortimer Excell v. Fischer*, No. 9:08-CV-945 (DNH/RFT), 2009 WL 3111711, at *9 (N.D.N.Y. Sept. 24, 2009) ("[C]ourts have roundly rejected the notion that ... a short period of confinement, without additional hardships, creates a liberty interest even when confinement is completely segregated, such as when an inmate is sent to ... [SHU].") (citing *Sealey*, 197 F.3d at 589-90).

Accordingly, plaintiff's Fourteenth Amendment due process claim against defendant Pilon is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 5. Equal Protection Claims Against Bullock and Pilon

The legal standard governing Fourteenth Amendment equal protection claims was discussed at length in the January 2025 Order and will not be restated herein. *See* January 2025 Order at 17-18.

The amended complaint does not include any new allegations related to plaintiff's equal protection claim. Rather, as with the original complaint, the pleading simply lists "equal protection" as one of plaintiff's claims. *See* Am. Compl. at 5.

Accordingly, and for the reasons set forth in the January 2025 Order, plaintiff's equal protection claims against defendants Bullock and Pilon are dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. *See* January 2025 Order at 17-19.

III.   **CONCLUSION**

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 20) is accepted for filing and will supersede and replace the original complaint as the operative pleading; and it is further

**ORDERED** that the following claims **SURVIVE sua sponte review**: (1) plaintiff's First Amendment retaliation claim against defendant Bullock; and (2) plaintiff's Eighth Amendment failure-to-protect claims against defendants Bullock and Uhler; and it is further

**ORDERED** that plaintiff's remaining Section 1983 claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

Dated: April 16, 2025
          Syracuse, NY

Brenda K. Sannes
Chief U.S. District Judge