UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMES O. YOUNG,

                            Plaintiff,

                                                         9:24-CV-1286
              v.                                         (BKS/PJE)

DONALD G. UHLER et al.,

                            Defendants.

_____

APPEARANCES:

JAMES O. YOUNG
Plaintiff, pro se
23-B-2114
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. LETITIA JAMES                          JUDSON N. KNAPPEN, ESQ.
New York State Attorney General             Ass't Attorney General
Attorney for Defendant
The Capitol
Albany, NY 12224


BRENDA K. SANNES
Chief United States District Judge

                    **DECISION and ORDER**

I.    **INTRODUCTION**

       Pro se plaintiff James O. Young commenced this action by filing a pro se civil rights

complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to

proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 8 ("IFP Application").  By Decision and Order entered on January 22, 2025, this Court granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), found that certain claims against defendants Corrections Sergeant Bullock and Superintendent Uhler required a response.  Dkt. No. 10 ("January 2025 Order").  Plaintiff's remaining Section 1983 claims were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  *Id*. at 20.

On March 5, 2025, counsel appeared on behalf of defendants Bullock and Uhler.  *See* Dkt. No. 17.  Thereafter, plaintiff filed an amended complaint as of right.  Dkt. No. 20 ("Am. Compl.").  On April 7, 2025, counsel filed an answer to the amended complaint.  *See* Dkt. No. 23 ("Answer").

By Decision and Order entered on April 16, 2025, this Court granted plaintiff's IFP Application, and following review of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed each of plaintiff's newly asserted claims and found that plaintiff's reasserted claims against defendants Bullock and Uhler once again survived sua sponte review and required a response.  Dkt. No. 25 ("April 2025 Order").  The next day, a Mandatory Pretrial Discovery and Scheduling Order was issued.  Dkt. No. 27 ("Scheduling Order").

Roughly three weeks later, plaintiff filed a letter request to supplement his pleading.  Dkt. No. 31.  By Decision and Order entered on July 18, 2025, the Court, among other things,

2

denied plaintiff's letter request without prejudice to him filing a proper amended complaint.

Dkt. No. 37.  Days later, the Court received a motion to amend from plaintiff, which was not

accompanied by a proposed amended pleading.  *See* Dkt. No. 38 ("Motion to Amend").  By

Text Order entered on July 23, 2025, Magistrate Judge Paul J. Evangelista denied plaintiff's

Motion to Amend without prejudice to him renewing the request with a proposed amended

pleading.  Dkt. No. 39.

On August 19, 2025, the Court received an enclosure letter from plaintiff, along with a

proposed second amended complaint, among other things.  Dkt. No. 40 ("Enclosure Letter");

Dkt. No. 40-1 ("Prop. SAC").  Out of an abundance of solicitude, the Court will consider

plaintiff's Motion to Amend and proposed second amended complaint together as a proper

filing.

## II.    MOTION TO AMEND

### A.    Legal Standard

The Federal Rules of Civil Procedure provide that courts "should freely give leave" to

amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit

has stated that "[t]his permissive standard is consistent with our strong preference for

resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F. 3d 208, 212-13 (2d Cir.

2011) (citation omitted).  Leave to amend should be given "absent evidence of undue delay,

bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party,

or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also*

*Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012)

(quoting *Monahan*, 214 F.3d at 283).

When a plaintiff seeks to add a new defendant, his motion also implicates Rule 21 of the Federal Rules of Civil Procedure.  Rule 21 authorizes a court, "on motion of any party or of its own initiative at any stage of the action and on such terms as are just," to order the addition of parties to an action.  Fed. R. Civ. P. 21; *City of Syracuse v. Onondaga Cnty.*, 464 F.3d 297, 308 (2d Cir. 2006).  That rule permits joinder "'of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable.'"  *Oneida Indian Nation of New York State v. Cnty. of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000) (McCurn, S.J.) (quoting, *inter alia*, *United States v. Hansel*, 999 F. Supp. 694, 697 (N.D.N.Y. 1998) (McAvoy, J.)).  However, "[a] decision as to whether to permit joinder under Rule 21 is informed by the same general principles as those governing motions for leave to amend under Rule 15(a)."  *Castro v. Heath*, No. 9:12-CV-01250 (MAD), 2013 WL 5354241, at *13 (N.D.N.Y. Sept. 23, 2013) (citing *Oneida Indian Nation of New York State*, 199 F.R.D. at 72-73).

The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion.  *Nettis v. Levitt*, 241 F.3d 186, 192 (2d Cir. 2001).

**B.    The Amended Complaint and April 2025 Order**

The amended complaint asserts Section 1983 claims arising out of alleged events that occurred during plaintiff's confinement at Upstate Correctional Facility.  *See generally*, Am. Compl.  More specifically, the pleading alleges that defendant Corrections Sergeant Bullock

4

threatened to house plaintiff with inmates who would harm him after a negative exchange regarding grievances filed by plaintiff, and thereafter caused corrections officials to house plaintiff with a violent inmate who attacked him.  Am. Compl. at 4-5.  The amended complaint further alleges that defendant Upstate Correctional Facility Superintendent Uhler "knew or should have kn[o]wn" about defendant Bullock's wrongdoing.  *Id*.[1]  In addition, the amended complaint separately alleges that Corrections Lieutenant Pilon deprived plaintiff of due process during a disciplinary hearing held on September 22, 2024, during which this official also threatened to tell other inmates that plaintiff is a "rape-o" as part of a verbal altercation. *Id*. at 4.

The amended complaint also named New York State Department of Corrections and Community Supervision ("DOCCS") Commissioner Martuscello and an unidentified number of "Doe" corrections officers as defendants.  *See* Am. Compl. at 1-3.

The amended complaint was construed to assert the following claims: (1) a First Amendment retaliation claim against defendant Bullock; (2) Eighth Amendment failure-to-protect claims against defendants Bullock, Pilon, Uhler, Martuscello, and an unidentified number of "Doe" corrections officers; (3) a Fourteenth Amendment disciplinary due process claim against defendant Pilon; and (4) Fourteenth Amendment equal protection claims against defendants Bullock and Pilon.  *See* April 2025 Order at 5.

---

[1]  Plaintiff attached to his amended complaint a copy of a letter addressed to defendant Uhler, which is dated May 6, 2024, and details the nature of plaintiff's discussion with defendant Bullock on April 28, 2024.  Am. Compl. at 6.  The Court has once again considered this letter as part of its sufficiency review herein.

Following review of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that only plaintiff's First Amendment retaliation claim against defendant Bullock and Eighth Amendment failure-to-protect claims against defendants Bullock and Uhler survived sua sponte review and required a response. *See* April 2025 Order at 12.

### C.    Overview of the Proposed Second Amended Complaint

Plaintiff's proposed second amended complaint is materially similar to the amended complaint, with a few exceptions.  First, the proposed pleading names four corrections officials as having allegedly been involved in carrying out Sergeant Bullock's orders related to plaintiff's housing assignments.  Second, the proposed pleading includes supplemental allegations of wrongdoing by Corrections Lieutenant Pilon.  Third, the proposed pleading asserts new claims against Superintendent Uhler, DOCCS Commissioner Martuscello, and New York State Attorney General James based on their alleged roles in a labor strike.  The following pertinent facts are set forth as alleged in the proposed second amended complaint.

On April 28, 2024, at approximately 6:30 a.m., plaintiff was called into the Sergeant's Office by defendant Corrections Sergeant Bullock to discuss "11-15 grievances plaintiff filed against several correction[s] officers[.]"  Prop. SAC at 4.  While in the office, defendant Bullock indicated that plaintiff "should have" brought the grievances to his attention before submitting them.  *Id*.  Shortly thereafter, the conversation "turned extremely negative" and plaintiff asked defendant Bullock "if the audio [and] video equipment [was] functioning in his office."  *Id*.  Defendant Bullock responded "in the affirmative" and "openly admitted" that he

6

intended to house plaintiff with other inmates "so they could and would do plaintiff some kind of harm[.]" *Id*. Plaintiff asked whether this statement meant that defendant Bullock intended to have plaintiff assaulted or killed, to which defendant Bullock responded, "Yes." *Id*. Defendant Bullock also stated that he has done this in the past with other inmates. *Id*.

Following this exchange, Bullock "order[ed]" corrections officers "not to move plaintiff to another cell" after plaintiff asked to be relocated "for his own safety." Prop. SAC at 4.

On September 15, 2024, Corrections Officer Grey moved plaintiff to a cell "with a murdere[r] who knew of plaintiff[']s charges" and threatened to harm plaintiff if he did not change cells. Prop. SAC. at 4. Plaintiff "took this threat serio[u]sly" and "asked" Corrections Officer Lust "to have him moved." *Id*. Lust "told plaintiff as per orders of [Sergeant] Bullock" he would not be moved. *Id*.

The next day, plaintiff asked Corrections Officer Ross "to move him" and Ross "just smiled and left." Prop. SAC at 4. Grey, Lust and Ross "obviously knew the dangers to plaintiff but did nothing about it[.]" *Id*.

At some point, Grey moved plaintiff to a cell with a different inmate who "had major problems" with inmates convicted of the same charge as plaintiff, and was involved in "a[n] altercation with his prior bunky for the exact same reasons." Prop. SAC at 9. Corrections Officers Lust, Grey, Ross, and French "knew . . . or should've known an altercation would happen" but "did nothing [except] smile and walk away when [plaintiff] asked . . . to be moved due to safety concerns." *Id*. Within fifteen minutes of entering this cell, plaintiff was involved in an altercation with this inmate. *Id*.

7

Plaintiff was also housed with at least two other inmates who threatened to assault him.  Prop. SAC at 10.  Corrections Officers Lust, Grey, Ross, and French were responsible for placing plaintiff in these new housing assignments and acted at the direction of Sergeant Bullock.  *Id*.  These officials also "knew that [plaintiff] was being moved and housed with [violent] and dangerous [inmates] that [he] should not have been housed [with]."  *Id*. at 9.  Lust and Ross "made it a point to walk by cells where [plaintiff] didn't want to be and shouldn't have been due to [the] State Directive [regarding] housing procedures . . . and laughed at [plaintiff] when [he] asked to be moved[.]"  *Id*.

On an unidentified date, one of plaintiff's cellmates "pulled" a "sharpened spoon" on plaintiff.  Prop. SAC at 10.  When plaintiff expressed concern to Corrections Officer Lust, this official "told plaintiff he could do nothing due to [Sergeant] Bullock[']s order[s]."  *Id*.

On or about March 20, August 23, September 5, September 27, and November 21, 2024, Corrections Lieutenant Pilon presided over disciplinary hearings involving plaintiff.  Prop. SAC at 5.  Pilon's disciplinary determination following the first hearing was "procedural[l]y flawe[d]" and decided despite the absence of "substantial evidence" of plaintiff's guilt.  *Id*.  Pilon also refused to allow plaintiff's witnesses to testify in that proceeding.  *Id*.

Plaintiff's second disciplinary hearing was also "proced[urally] defective" in that Lieutenant Pilon failed to "put the reason for the Tier II designation in writing[.]"  Prop. SAC at 5.  When plaintiff "asked for the paperwork[,]" Lieutenant Pilon accused him of being "argumentative" and "went [in]to a raging verbal assault" on plaintiff, threatening to "tell

8

everyone on [the] block that [he is] a rape-o" before calling him a "scumbag" and dismissing him from the proceeding. *Id.* at 5-6. Thereafter, Lieutenant Pilon proceeded with the hearing in plaintiff's absence, found him guilty of the disciplinary charges despite the absence of "substantial evidence" to support that determination, and sentenced him to "30 days." *Id.* at 5-7.

During the disciplinary hearing on September 28, 2024, Lieutenant Pilon once again removed plaintiff from the proceeding after plaintiff requested a new hearing officer. Prop. SAC at 7. Before dismissing plaintiff, Lieutenant Pilon "turned off the tape recording and again berated [plaintiff]" by threatening to tell the other inmates on his block "about [his] charges" and have him housed with other inmates that would harm him. *Id.*

When plaintiff appeared before Lieutenant Pilon again on November 24, 2024, he asked Lieutenant Pilon for the "written report" related to the incident at issue. Prop. SAC at 7. Lieutenant Pilon "refused" to provide the report or the entire "video and audio" of the relevant incident. *Id.* Plaintiff also presented video evidence in support of his defense, which Lieutenant Pilon failed to properly consider. *Id.* at 8.

At some point during the hearing, Lieutenant Pilon "resumed the threat of voilence [sic] towards [plaintiff] by stating again [that] he would tell people in the block and in the facility that [plaintiff is] a scumbag and a F***ing rapist." Prop. SAC at 8.

On April 13, 2025, Lieutenant Pilon presided over a disciplinary hearing involving plaintiff's cellmate. Prop. SAC at 8-9. At the conclusion of the hearing, Lieutenant Pilon told this inmate that he would be found not guilty if he went "directly to [his] cell and F**K-up [his]

9

bunky[.]" *Id*. at 9. According to plaintiff, this statement was recorded. *Id*. Thereafter, plaintiff's cellmate informed plaintiff about Lieutenant Pilon's statement. *Id*.

According to plaintiff, Superintendent Uhler "knew or should have known" about Lieutenant Pilon's "unlawful conduct towards [plaintiff]" based on grievances filed by plaintiff, which were appealed to him, a "personal letter" that plaintiff sent to him, and plaintiff naming him as a party "in several court actions[.]" Prop. SAC at 10. Plaintiff also sent Superintendent Uhler "letters" about other wrongdoing within the facility, and this official otherwise "knew what was happening" because he "supervised" Lieutenant Pilon, Sergeant Bullock, and the Corrections Officers within his facility. *Id*.

The proposed second amended complaint also asserts Section 1983 claims against Superintendent Uhler, DOCCS Commissioner Martuscello, and New York Attorney General James based on their alleged wrongdoing in connection with an "illegal" labor strike that began in mid-February, 2025. *See* Prop. SAC at 1-3, 10-12.

In addition to the aforementioned officials, the proposed second amended complaint also names "John Jane Doe C.O.'s" as defendants based on the alleged role of these officials in housing plaintiff in unsafe environments. *See* Prop. SAC at 1-3, 9.

Liberally construed, the proposed second amended complaint asserts the following Section 1983 claims against the named defendants: (1) First Amendment retaliation claims against Bullock and Pilon; (2) Eighth Amendment failure-to-protect claims against Bullock,

Pilon, Lust, Grey, Ross, French, Uhler, and the "Doe" corrections officers;[2] (3) a Fourteenth

Amendment disciplinary due process claim against defendant Pilon; and (4) Section 1983

claims against Uhler, Martuscello, and James related to the labor strike.

For a more complete statement of plaintiff's claims, reference is made to the proposed

second amended complaint.

---

[2]  The proposed second amended complaint vaguely alleges that DOCCS Commissioner Martuscello "knew or at least should have known . . . of the unlawful conduct" within Upstate Correctional Facility because he was "served" with papers in state court proceedings initiated by plaintiff.  *See* Prop. SAC at 11.  The pleading, however, does not allege that plaintiff faced an ongoing risk of harm at the time he initiated his state court proceedings, or indicate when those actions were commenced.  Moreover, the law is well-settled that sending a letter to a supervisory official is not, without more, sufficient to charge the official with personal involvement in alleged misconduct.  *See, e.g., Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"); *Braxton v. Bruen*, No. 9:17-CV-1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) ("Even before *Tangreti*, receipt by a supervisory official of a letter from an inmate, without more, has been insufficient to establish the official's personal involvement in a § 1983 constitutional claim." (collecting cases)), *vacated on other grounds by Braxton v. Bruen*, No. 21-2795, 2023 WL 7478331 (2d Cir. Nov. 13, 2023); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017)); *see also Diaz v. Bowles*, No. 20-CV-997, 2023 WL 2631809, at *3 (D. Conn. Mar. 24, 2023) ("A conclusory allegation that a defendant or defendants created a policy or custom under which unconstitutional practices occurred is insufficient to state an Eighth Amendment claim."); *Myers on behalf of Est. of Myers v. Davenport*, No. 21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *5 (N.D.N.Y. July 29, 2022) ("[A] plaintiff may establish a policy-making official's personal involvement by, first, alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus there is a tangible connection between their policymaking conduct and the alleged harm. . . . [and] [s]econd establish[ing] the elements of the underlying claim directly against each defendant.").  Accordingly, and for the reasons set forth in the January 2025 Order, the Court does not construe the proposed second amended complaint to assert a cognizable Eighth Amendment claim against DOCCS Commissioner Martuscello related to plaintiff's housing assignments.  *See* January 2025 Order at 10-11.

**C.    Analysis**

**1.    Section 1983 Claims Related to Labor Strike**

In addition to plaintiff asserting claims arising out of his housing assignments and disciplinary hearings between March and November, 2024, the proposed second amended complaint includes allegations of wrongdoing related to a prison labor strike beginning in mid-February 2025, and deprivations suffered by plaintiff as a result of related staffing issues. *See* Prop. SAC at 10-12.  Plaintiff's allegations of wrongdoing related to the labor strike are entirely unrelated to the allegations of wrongdoing that formed the basis of this action when it was commenced.

While courts "should freely give leave" to amend a complaint "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), "[c]ourts regularly deny motions to amend where the moving party seeks to add claims involving collateral matters, based on different factual allegations and distinct legal theories, from the claims already at issue in a case." *Amusement Indus. v. Stern*, No. 07-CV-11586, 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 10, 2014); *Mitchell v. Cuomo*, No. 17-CV-0892 (TJM/DJS), 2019 WL 1397195, at *3 (N.D.N.Y. Mar. 28, 2019) (adopting Magistrate Judge's recommendation to deny motion to supplement where "[t]he proposed First Amendment claims are neither related to nor pertain to the allegations in the operative pleading, thus providing a basis to deny amendment under Rule 15(d)"); *Beckett v. Inc. Vill. of Freeport*, No. 11-CV-2163, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014) ("Supplemental pleadings are limited to subsequent events related to the

claim or defense presented in the original pleading." (internal quotation marks omitted)); *see also Brooks v. Rock*, No. 11-CV-1171 (GLS/ATB), 2014 WL 1292232, at *3 (N.D.N.Y. Mar. 28, 2014) (denying motion to amend to add allegations of retaliation and failure to protect from alleged conspiracy, where the original facts occurred in 2011 and the proposed new facts occurred in 2013); *Smith v. Goord*, No. 04-CV-6432, 2007 WL 496371, at *3 (W.D.N.Y. Feb. 12, 2007) (denying motion to add claims against original and new defendants based on events occurring more than one year after the original alleged events).  In addition, leave to amend or supplement is properly denied where the motion "would unduly delay the course of proceedings by, for example, introducing new issues for discovery."  *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (internal citation omitted); *see also Mitchell*, 2019 WL 1397195, at *3 ("Furthermore, denial of the motion to amend to add the First Amendment claims was proper because the addition of the claims would not promote the economic and speedy disposition of the controversy between the parties as framed in the operative pleading."); *Girard v. Hickey*, No. 9:15-CV-0187 (TJM/DJS), 2016 WL 915253, at *6 (N.D.N.Y. Mar. 4, 2016) ("[B]ecause this case presently includes multiple causes of action asserted against multiple defendants, the Court finds that the addition of numerous other defendants and unrelated claims arising at entirely distinct locations will necessarily prolong this action and impose additional expense on defendants. Moreover, the Court finds that adding these new claims would not aid in the efficient resolution of this action.").

In light of the foregoing, drastically expanding the scope of this action to include claims related to a labor strike would not serve the interests of justice and would instead

unnecessarily delay this aging case even further.  In addition, there is no apparent prejudice to plaintiff in denying him the opportunity to supplement his pleading at this time with respect to his proposed claims arising out of the alleged labor strike because he is free to commence a new lawsuit based on this alleged wrongdoing.  *See Purcelle v. Thomas*, No. 9:18-CV-0077 (GLS/TWD), 2019 WL 1762628, at *3 (N.D.N.Y. Apr. 22, 2019) (denying motion to supplement where the proposed supplemental complaint "only tangentially relates to the incidents originally giving rise to this action," noting that "defendants would be unfairly prejudiced by the addition of new claims and new defendants" because discovery was set to expire shortly, and conversely plaintiff would suffer no apparent prejudice if the motion was denied because he could pursue the claims in his proposed supplemental complaint by commencing a new action).

Accordingly, plaintiff's Motion to Amend is denied insofar as plaintiff seeks to assert Section 1983 claims against Superintendent Uhler, DOCCS Commissioner Martuscello, and New York State Attorney General James arising out of a prison labor strike.

### 2.  Section 1983 Claims Against "Doe" Defendants

Insofar as the proposed second amended complaint asserts failure-to-protect claims against "Doe" defendants based on allegations that these officials were also involved in plaintiff's housing assignments, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Thus, "a Section 1983 plaintiff must 'allege a

14

tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v.*
*Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v.*
*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

When the name of an individual defendant is unknown, it is not inappropriate to
identify him or her in the pleading as a "Doe" defendant.  However, the pleading must allege
facts sufficient to plausibly suggest that each "Doe" defendant was personally involved in the
alleged constitutional deprivations.  *See Little v. Mun. Corp.*, 51 F. Supp. 3d 473, 493-94
(S.D.N.Y. 2014) (dismissing without prejudice excessive force claim asserted against
"members of the 'Special Search Team' and 'ESU Officers'" and noting that, "[t]o the extent
that [plaintiff] does not know the names of the members of the Special Search Team or ESU
Officers involved, he may name 'John Doe' defendants and include as much identifying
information as he has knowledge of, for the purpose of filing an amended complaint, should
Little chose to do so"); *Williams v. 120 PCT Undercover*, No. 11-CV-4690, 2011 WL
13128209, at *1 (E.D.N.Y. Oct. 18, 2011) (dismissing complaint without prejudice where
plaintiff's claims provided information about the alleged constitutional deprivations, but were
brought against "the 120 Precinct and District 9, a police precinct and district of the New York
City Police Department").

"Pleadings that do not differentiate which defendant was involved in the unlawful
conduct are insufficient to state a claim."  *Ying Li v. City of New York*, No. 15-CV-1599, 2017
WL 1208422, at *6 (E.D.N.Y. Mar. 31, 2017); *see also Wright v. Orleans Cnty.*, No. 14-CV-
0622, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (noting in a Section 1983 case

15

that "[g]roup pleading is insufficient for purposes of Rule 8(a)(2) [of the FRCP] which requires a short and plain statement of the claim showing that the pleader is entitled to relief" (citation and quotation marks omitted)); *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *7, *22 (S.D.N.Y. Jan. 27, 2012) ("[FRCP] 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it.").  In other words, a pleading must allege facts which plausibly suggest both who was involved in the alleged constitutional deprivations, and how they were involved.  *See also Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998))).

In this case, the proposed second amended complaint names, in place of the "Doe" defendants named in the amended complaint, four new corrections officials as allegedly having been responsible for carrying out defendant Bullock's orders related to plaintiff's housing assignments.  The pleading does not explain how any other officials may have been involved in placing plaintiff at risk of harm.  Indeed, it is entirely unclear from the allegations in the proposed second amended complaint when and where plaintiff may have interacted with any officials other than those specifically named as defendants (i.e., "Doe" officials), what plaintiff communicated to these officials during those interactions, and what was communicated to plaintiff in response.  Plaintiff also does not provide a physical description of any of these officials.  In other words, it is entirely unclear from the vague allegations in the

16

proposed second amended complaint how any "Doe" defendant may have been personally involved in violating plaintiff's constitutional rights. *See, e.g., Traore v. Rikers Island C-95 & C-76*, No. 22-CV-1432, 2022 WL 1556946, at *4-5 (S.D.N.Y. May 16, 2022) ("Plaintiff names 'Rikers Island C95 and C76 medical staff and correctional officers.' The 'medical staff' is not considered a person under Section 1983. . . . Also, Rikers Island is not a 'person' within the meaning of Section 1983. . . . The Court therefore dismisses Plaintiff's claims against 'Rikers Island C95 and C76 medical staff for failure to state a claim on which relief may be granted.'"); *McCall v. Elmira Corr. Fac. Med. Staff*, No. 14-CV-0258, 2014 WL 1747218, at *2 (W.D.N.Y. Apr. 29, 2014) (dismissing claims against correctional facility "medical staff" and providing differing reasons for why "[t]he medical staff at Elmira [Correctional Facility] is not a proper defendant").

Accordingly, plaintiff's Motion to Amend is denied as futile insofar as plaintiff seeks to assert Section 1983 claims against any "Doe" corrections officers.

### 3. Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations

17

establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action."  *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).  "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

"To be an 'adverse action,' retaliatory conduct must be the type that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"  *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020) (quoting *Davis*, 320 F.3d at 353)). In general, "[c]ourts have found that, while verbal threats may qualify as adverse actions" for purposes of a First Amendment retaliation claim, the threats "must be 'sufficiently specific and direct' to be actionable."  *Tutora v. Gessner*, No. 17-CV-9517, 2019 WL 1382812, at *7 (S.D.N.Y. Mar. 27, 2019) (quoting *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *11 (S.D.N.Y. Sept. 28, 2018)).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that the proposed second amended complaint alleges facts sufficient for plaintiff's retaliation claims to survive sua sponte review.  Accordingly, plaintiff's Motion to Amend is granted insofar as the proposed second amended complaint asserts First Amendment retaliation claims against defendants

Bullock and Pilon.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Failure-to-Protect Claims Against Bullock, Pilon, Lust, Grey, Ross, French, and Uhler

Prison officials may separately be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm.  *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer*, 511 U.S. at 836.  Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.'"  *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes v. New York City Dept. of Corrs*., 84 F.3d 614, 620-21 (2d Cir. 1996) (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact).  "Courts have [also] found that a

19

prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that the proposed second amended complaint alleges facts sufficient for plaintiff's Eighth Amendment failure-to-protect claims to survive sua sponte review. Accordingly, plaintiff's Motion to Amend is granted insofar as the proposed second amended complaint asserts failure-to-protect claims against defendants Bullock, Pilon, Lust, Grey, Ross, French, and Uhler. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Due Process Claim Against Pilon

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d

20

Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658. To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484). When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998). While under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon v. Howard*, 215 F.3d 227, 232 n.5 (2d Cir. 2000)), the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has

21

been held to be atypical even if under "normal conditions."  *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

The proposed second amended complaint alleges that defendant Pilon presided over five separate disciplinary hearings arising out of misbehavior reports issued to plaintiff, and wrongfully found plaintiff guilty of the charged misconduct at the conclusion of each hearing. *See* Prop. SAC at 5-7.  However, with the exception of the hearing held on or about September 5, 2024, the pleading does not identify the nature of the disciplinary sanctions imposed against plaintiff.  *Id*.

Without knowing the nature of the disciplinary sanctions imposed against plaintiff during four of his hearings, the Court is unable to plausibly infer that the sanctions related to one or more of these hearings deprived plaintiff of a liberty interest.  *See, e.g., Sandin*, 515 U.S. at 485-86 (holding that special confinement for thirty days did not implicate constitutional liberty interests); *Colon*, 215 F.3d at 231 (holding that normal SHU confinement for up to 101 days does not constitute "atypical and significant hardship"); *Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001) (holding that a prisoner's multiple sentences to confinement may be aggregated for the purposes of establishing whether a liberty interest was implicated in certain circumstances); *Sealey v. Giltner*, 197 F.3d 578, 587-88 (2d Cir. 1999) (aggregating two periods of SHU segregation).

Moreover, with respect to the disciplinary hearing held on September 27, 2024, plaintiff only alleges that he received a sentence of "30 days." Prop. SAC at 5-7.[3] Even assuming that plaintiff was deprived of the process to which he was entitled during this disciplinary hearing, the law is well-settled that sanctions more severe than 30 days of restrictive confinement do not trigger a liberty interest. *See, e.g., Marcus v. Annucci*, No. 20-CV-06234, 2022 WL 280935, at *2, *6 (S.D.N.Y. Jan. 31, 2022) (finding no constitutional violation in a SHU sentence that involves, inter alia, the loss of "recreation, packages, commissary, and phone privileges for ninety days"); *Jackson v. Annucci*, No. 20-CV-2008, 2021 WL 2581340, at *10 (S.D.N.Y. June 23, 2021) (same); *Keyes v. Annucci*, No. 9:18-CV-0372 (GTS/DJS), 2019 WL 4602240, at *13-14 (N.D.N.Y. Sept. 23, 2019) (granting motion to dismiss as to due process claim based on 60 days of keeplock confinement with loss of package, commissary, phone and recreation privileges, which did not trigger a valid liberty interest); *Mortimer Excell v. Fischer*, No. 9:08-CV-945 (DNH/RFT), 2009 WL 3111711, at *9 (N.D.N.Y. Sept. 24, 2009) ("[C]ourts have roundly rejected the notion that ... a short period of confinement, without additional hardships, creates a liberty interest even when confinement is completely segregated, such as when an inmate is sent to ... [SHU].").

---

[3] Because the pleading does not identify plaintiff's other disciplinary sanctions, the Court also cannot infer that this period of restrictive confinement resulted in a continuation of restrictive confinement from an earlier disciplinary sanction.

Accordingly, and for the reasons set forth in the April 2025 Order, plaintiff's Motion to Amend is denied as futile insofar as plaintiff seeks to assert a Fourteenth Amendment due process claim against defendant Pilon.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Motion to Amend (Dkt. No. 38) is **GRANTED in part and DENIED in part** as set forth above; and it is further

**ORDERED** that the proposed second amended complaint (Dkt. No. 40-1) will supersede and replace the amended complaint as the operative pleading. The Clerk is directed to docket the proposed second amended complaint (Dkt. No. 40-1) as the Second Amended Complaint; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review and require a response: (1) plaintiff's First Amendment retaliation claims against Bullock and Pilon; and (2) plaintiff's Eighth Amendment failure-to-protect claims against Bullock, Pilon, Lust, Grey, Ross, French, and Uhler; and it is further

**ORDERED** that the Clerk shall add the following officials to the docket as defendants: (1) Corrections Officer Lust; (2) Corrections Officer Grey; (3) Corrections Officer Ross; and (4) Corrections Officer French; and it is further

**ORDERED** that the Clerk shall **REINSTATE** Corrections Lieutenant Pilon as a defendant; and it is further

24

**ORDERED** that upon receipt from plaintiff of five copies of his second amended complaint, the Clerk shall issue summonses and forward them, along with the necessary copies of the second amended complaint, to the United States Marshal for service upon defendants Lust, Grey, Ross, French, and Pilon; and it is further

**ORDERED** that upon the completion of service, the Clerk return this matter to the Honorable Paul J. Evangelista to reset the discovery deadline in this case; and it is further

**ORDERED** that no further submissions will be considered by this Court until after the completion of service; and it is further

**ORDERED** that upon the completion of service, a response to the second amended complaint be filed by the surviving defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action; and it is further

25

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the

unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron*

*v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties.

**IT IS SO ORDERED**.

Dated: <u>October 9, 2025</u>
      Syracuse, NY

Brenda K. Sannes
Chief U.S. District Judge

26